# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**DAVID J. GOMERINGER**
and **MANUELA K. GOMERINGER**,

    Plaintiffs,

v.   2:23-cv-89-SPC-NPM

**THE BOAT HOUSE OF CAPE CORAL, LLC**,
and **CAROLINA SKIFF, LLC**,

    Defendants.

---

## ORDER

This is a breach-of-warranty case concerning a center console powerboat known as a 2020 Sea Chaser 35 HFC manufactured by defendant Carolina Skiff, LLC and sold in November 2019 by defendant The Boat House of Cape Coral, LLC to plaintiffs David J. and Manuela K. Gomeringer. As alleged in the complaint, a "written warranty was part of the basis of the bargain of the contract upon which plaintiffs relied for the purchase of the vessel." (Doc. 1 ¶ 40 (cleaned up)). Indeed, they obtained repair services from the defendants pursuant to the written warranty on at least seven occasions between March 2020 and May 2021. (Doc. 1 ¶¶ 19-27). But according to a marine survey commissioned by the defendants, numerous defects remain, and the vessel "is not suitable or safe to operate for [its] intended use." (Doc. 1 ¶¶ 28-29).

Since the vessel "has not been properly repaired under the express warranty" (Doc. 1 ¶¶ 41, 56), and the defendants have failed to provide a refund or replacement pursuant to the express warranty following the failed repairs (Doc. 1 ¶¶ 101, 106), the Gomeringers seek to hold the defendants liable under the Magnuson-Moss Warranty Act and Florida's Deceptive and Unfair Trade Practices Act. (Doc. 1). The express warranty contains both a forum-selection clause and an arbitration clause. (Doc. 23-1 ¶¶ 7-8). Invoking each, defendant Carolina Skiff asks the court to dismiss the Gomeringers' claims against it and to refer those claims to arbitration.

## I.   The Forum-Selection Clause Does Not Warrant Dismissal

The warranty contains the following forum-selection clause:

> To the extent any action is permitted in a court of competent jurisdiction, such action shall take place in the state or federal courts sitting in Waycross County, Georgia, the parties hereby waiving any claim or defense that such forum is not convenient or proper.

(Doc. 23-1 ¶ 7). But Carolina Skiff does not ask us to transfer this action to a corresponding district court in Georgia. Instead, it seeks a Rule 12(b)(3) dismissal for improper venue based on the contention that the forum-selection clause makes any court not sitting in Waycross County, Georgia[1] improper. This argument ignores both the governing statute and binding precedent and must be rejected.

---

[1] There is no such thing as Waycross County, Georgia. Rather, Waycross is an incorporated city in—and the county seat of—Ware County, Georgia. Plaintiffs do not take issue with this ambiguity, and we can nevertheless set it aside because, even if the forum-selection clause correctly identified a particular venue, it would not change the analysis.

2

The question of whether venue is proper in a particular federal forum is governed by 28 U.S.C. § 1391, which states: "[e]xcept as otherwise provided by *law* ... this section *shall* govern the venue of *all* civil actions brought in district courts of the United States." § 1391(a)(1) (emphasis added). Consequently, "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of … Rule 12(b)(3)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W Dist. of Texas*, 571 U.S. 49, 59 (2013). So, if "venue complies with § 1391, a district court may not dismiss a complaint under Rule 12(b)(3), regardless of whether a forum-selection clause requires a different forum." *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 964 n.2 (11th Cir. 2014) (citing *Atl. Marine Const. Co.*, 571 U.S. at 58).

Under § 1391(b)(1) (where "any defendant resides, if all defendants are residents of the State")[2] and § 1391(b)(2) (where "a substantial part of the events or omissions giving rise to the claim occurred"), this district is a proper venue. Accordingly, Carolina Skiff's motion to dismiss for improper venue is denied.

---

[2] The Boat House resides in this district, and—for purposes of venue—Carolina Skiff is deemed a resident as well because it is subject to this "court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

## II. The Arbitration Clause Warrants a Stay in Favor of Arbitration

The warranty's arbitration provision states:

> Any controversy or claim arising out of or relating to this Warranty, or breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules. The number of arbitrators shall be three. The place of arbitration shall be Waycross, Georgia. Georgia law shall apply. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

(Doc. 23-1, ¶ 8). And pursuant to the Federal Arbitration Act, courts must "rigorously … enforce arbitration agreements according to their terms." *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (quoting *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)); *see also id.* at 505 (observing that the FAA establishes "a liberal federal policy favoring arbitration agreements") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967))).

As stated in the Act, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And the Gomeringers do not interpose any ground for revocation, "such as fraud, duress, or unconscionability." *Epic Systems*, 584 U.S. at 507 (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Indeed, nowhere do they suggest that the arbitration agreement was extracted, say, by an act of fraud or duress or in some other unconscionable way.

Rather, they contend—without citation to any authority—that even though the existence of the warranty was crucial to their acquisition of the vessel,[3] the arbitration provision is unenforceable, because Carolina Skiff has not shown that they had actual notice of it at the time of purchase in order to establish mutual assent. In other words, the Gomeringers knew about and relied upon the warranty when acquiring the vessel,[4] and they have invoked their rights under the warranty—on numerous occasions—to obtain repair services, but they may not have read the warranty's arbitration paragraph prior to the purchase and should therefore escape its reach. But this proffered basis for avoiding the arbitration provision lacks merit for at least two reasons: the written agreement provides that contract-formation challenges are for the arbitrators to resolve, and—even if that were not the case—actual notice of the arbitration provision at the time of sale is not required.

Generally, questions about whether and what the parties agreed to arbitrate are for a court to resolve. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). But when an arbitration provision clearly and unmistakably provides otherwise, such "gateway" issues are for the arbitrator(s) to decide. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529-530 (2019); *see*

---

[3] *See* Doc. 1 ¶ 40; *see also* Doc. 25 at 6 ("Plaintiffs concede they were advised as to a limited warranty at the time of purchase.").

[4] The warranty's preamble specifically refers to the year, make, and model of the vessel at issue. *See* Doc. 23-1 at 2.

5

*also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as *whether the parties have agreed to arbitrate* or whether their agreement covers a particular controversy.") (emphasis added). Courts look to the "wording of the delegation provision itself" to determine the requisite intent. *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017) (reasoning that phrases like "any and all disputes arising out of or in connection with this Agreement" or "any issue regarding whether a particular dispute or controversy is … subject to arbitration" demonstrate a clear and unmistakable intent to arbitrate gateway issues).[5]

Here, the warranty's arbitration provision clearly and unmistakably provides that any gateway questions about arbitrability are to be resolved at arbitration. First, the arbitration provision broadly delegates to the arbitrators "[a]ny controversy or claim arising out of or relating to this Warranty." And to be sure, "'any' means all." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1299 (11th Cir. 2021); *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"). Second, the arbitration provision incorporates the American Arbitration

---

[5] If a controversy were to return to us because an arbitrator found no agreement to arbitrate, it is not as if the party who resisted the referral would be without recourse. The attorney, law firm, or party who obtained the referral to arbitration could be sanctioned. *See*, *e.g.*, Civil Rule 11; *see also* Doc. 23 at 2 (certifying that Doc. 23-1 is a true and correct copy of the written warranty).

Association's Commercial Arbitration Rules. And under AAA Rule 7(a):

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the *existence, scope, or validity of the arbitration agreement* or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

Commercial Arbitration Rules and Mediation Procedure, AM. ARB. ASS'N, Rule 7(a) (emphasis added).[6] "This alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator." *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018) (cleaned up); *see also U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (same); *Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332 (11th Cir. 2005) (same). Thus, the court cannot override the arbitration provision and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 529; *see also Rent-A-Center*, 561 U.S. at 72 (with no challenge specific to the gateway-delegation provision, courts must treat it as valid and enforce it). Accordingly, Carolina Skiff is entitled to compel arbitration, and the arbitrators—not the court—will determine whether the Gomeringers agreed to arbitrate, as well as every other issue arising out of or relating to the written warranty.

While it will be for the arbitrators to decide whether the Gomeringers had actual notice of the arbitration provision at the time of sale and whether they are

---

[6] Available Feb. 28, 2024 at https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf

nevertheless bound to the arbitration provision if they did not, courts have rejected the notion that purchasers can avoid obligations to arbitrate based on various forms of "I-didn't-read-it" or "I-didn't-sign-it" excuses. Of note, the Gomeringers do not suggest that Carolina Skiff did anything to keep them from reading the arbitration provision, or that Carolina Skiff otherwise did not provide a reasonable opportunity for them to review it. To the contrary, they affirmatively state that they were made aware of the warranty at the time of purchase. (Doc. 25 at 6).

As the Eleventh Circuit explained in *Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 682-683 (2018):

> Post-purchase, acceptance-by-retention warranties are ubiquitous today—think furniture, home appliances, sporting goods, etc. It's not only objectively reasonable to assume that such items come with terms and conditions, it's also eminently reasonable to assume that by opening and retaining those items a consumer necessarily accepts the accompanying terms and conditions. *See Kolodziej* [*v. Mason*], 774 F.3d [736,] 742 [(11th Cir. 2014)] ("[T]he law imputes to a person an intention corresponding to the reasonable meaning of his words and acts." (quotations omitted)).
>
> \*   \*   \*
>
> At the end of the day, the point is simply this: modern consumers are on notice that products come with warranties and other terms and conditions of purchase. And they are free to research (or not), request (or not), and read (or not) those terms before unwrapping their purchases.

And here, not only did the Gomeringers take delivery of, retain, and use a vessel with knowledge that it was subject to a written warranty, but they even availed themselves of the benefits of the warranty by having the defendants repair it. Having assented—by their acts, if not more—to the terms of the sale, a wealth of authority

8

would support their being bound to the warranty's arbitration provision whether they took the time to read it or not. *See id.*; *see also Hill v. Gateway 2000*, 105 F.3d 1147, 1150 (7th Cir. 1997) (rejecting the "I-didn't-read-it" excuse because there are several ways by which consumers can discover the terms of their purchases, such as asking the vendor for an advance copy, consulting publicly available sources like vendor websites, or by inspecting the documents after the product's delivery); *International Paper Co. v. Schwabedissen Maschinen & Anlagen Gmbh*, 206 F.3d 411, 418 (4th Cir. 2000) (holding that a party cannot, on the one hand, obtain benefits from—or advance claims based on—a written warranty and, on the other hand, avoid its arbitration provision).

Finally, in conjunction with its request to compel arbitration, Carolina Skiff moves the court for a dismissal. But the Federal Arbitration Act contemplates a stay, rather than a dismissal (*see* 9 U.S.C. § 3), and the Eleventh Circuit counsels that a dismissal would be error. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992). So, Carolina Skiff's motion will be granted in part, and the action against it will be stayed pending the arbitration of the Gomeringers' claims.

**III.   A Potential Invocation of the Arbitration Provision by the Boat House**

Our conclusion that the Gomeringers must arbitrate their claims against Carolina Skiff is not the whole story. They have asserted the same claims against the Boat House. And while the Boat House is not a party to the warranty or its arbitration

provision, it may nonetheless invoke the warranty's arbitration provision if the relevant state contract law allows it. *See Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, *3 (M.D. Fla. Nov. 12, 2019); *Hudson Glob. Res. Mgmt., Inc. v. Beck*, No. 8:05-cv-1446-T-27TBM, 2006 WL 1722353, *6-7 (M.D. Fla. June 20, 2006).

Under Georgia law,[7] a party to a contract with an arbitration provision is equitably estopped from avoiding a non-party's invocation of the arbitration provision when (1) the party must rely on the terms of the contract to assert its claims against the non-party, or (2) the party alleges interdependent and concerted misconduct by both the non-party and other parties to the contract. *See Price v. Ernst & Young, LLP*, 617 S.E.2d 156, 160 (Ga. Ct. App. 2005). And as for the Gomeringers' claims against the Boat House, both alternative grounds for equitable estoppel appear satisfied.

For their Magnuson-Moss express-warranty claim and their FDUTPA claim against the Boat House, the Gomeringers rely upon the written warranty. *See*, *e.g.*, Doc. 1 ¶ 42 ("BOAT HOUSE's failure or refusal to adequately repair The Vessel is a breach of the express warranty"); Doc. 1 ¶ 101 ("BOAT HOUSE violated Fla. Stat.

---

[7] The warranty's choice-of-law and arbitration provisions mandate the application of Georgia law. (Doc. 23-1). Whether the court were to apply Georgia or Florida law, it appears that the equitable-estoppel standard would be the same. *See Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 767 (Fla. 1st DCA 2018).

§ 501.976(7) by failing to honor its express warranty of a refund or replacement at no cost to PLAINTIFFS following reasonable repair attempts."); *see also Price*, 274 Ga. App. at 176 (a party relies on the contract when the claims relate "directly to— or presume the existence of—the contract that incorporates the arbitration agreement").

And perhaps more importantly, the Gomeringers advance mirror-image counts against, and allege interdependent and concerted misconduct by, Carolina Skiff and the Boat House. *See, e.g.*, Doc. 1 ¶ 17 ("Defendants … made material representations to PLAINTIFFS regarding the performance and dependability of The Vessel, to induce PLAINTIFFS to purchase The Vessel"); Doc. 1 ¶ 30 ("Defendants have not cured the defects associated with The Vessel."). It appears, then, that the Boat House is entitled to invoke the written warranty's arbitration provision.

## IV. Conclusion

Carolina Skiff's motion (Doc. 23) is **GRANTED in part**.[8] Pursuant to the FAA, 9 U.S.C. §§ 3 & 4, this action shall be stayed as to Carolina Skiff and the Gomeringers' claims against Carolina Skiff shall be arbitrated in accordance with the terms of the written warranty's arbitration provision (Doc. 23-1 ¶ 8). By **March**

---

[8] The motion asked us to take up some Rule 12(b)(6) arguments "only in the event that" we did not enforce either the forum-selection or the arbitration provision. (Doc. 23 at 3). Having enforced the arbitration provision, we need not reach them.

**20, 2024**, the parties shall confer and file either (1) a joint notice confirming they agree to arbitrate the claims against the Boat House as well; (2) a joint notice confirming that the Boat House does not wish to invoke the arbitration provision, and stating the parties' respective positions about whether the claims against the Boat House should be stayed; _**or**_ (3) their respective memoranda about whether the claims against the Boat House should be referred to the arbitration.

**ORDERED** on February 28, 2024

_____
NICHOLAS P. MIZELL
United States Magistrate Judge